Thank you, Judge Reinhart, and may it please the Court, Matthew McGill of Gibson, Dunn & Crutcher for the appellant NML Capital. Argentina's national space agency, CONAI, has an executory contract with SpaceX, under which CONAI is obtaining valuable commercial services. Those contractual rights are attachable property under California law, and by exercising its contractual rights to obtain services here in the United States, CONAI is using its contractual rights for a commercial activity in the United States. The District Court here erred when it analyzed the use of the contractual rights from the perspective of SpaceX rather than CONAI. At pages 11 and 12 of the excerpts of record, the District Court says, quote, SpaceX's conduct is nothing more than maintenance in connection with a commercial activity. And it later says, again quoting, to fit SpaceX's conduct within the definition of use requires a lexicographical distention, end quote. But the question here is not whether SpaceX is using its contractual rights for a commercial activity. It's whether CONAI is using the contractual rights for a commercial activity. So the District Court here looked at the case and the key question through the wrong end of the telescope, and that led to the somewhat absurd conclusion that the contractual rights here would be used, but only once the satellite was actually being launched into space. The correct analysis is derived from this court's decision in AFCAP, which looks to the Fifth Circuit's decision in Connecticut Bank of Commerce. And in the Connecticut Bank of Commerce case, the Fifth Circuit explained that a letter of credit would be used for a commercial activity where it was, and I'm quoting here from page 258 of the Connecticut Bank of Commerce case, where it was used to, quote, secure the services of an American corporation to do drilling work. I would submit that this case is an even stronger case than Connecticut Bank of Commerce because the contractual rights here are securing services of an American corporation, SpaceX, to do work here in the United States. So what's the property right that's at stake that you want to attach? Is the opportunity – is the contract? It's the contract. All of Argentina's rights under its contract with SpaceX, which may, for instance, include a right to a refund. It could include, of course, the right to launch the satellite. It could include any number of things, and we don't know, because the contract was not presented to the district court. So it's the rights that derive from the contract, including its line in the launch scenario. That's correct, Judge Paius, and it is our belief and understanding that we could re-market the opportunity to launch a satellite because essentially there is a supply and demand issue here. There are far many more satellites that need to go up into space than there are vehicles to launch them. Now, I didn't read the district court's – interestingly, the district court, when it dismissed the case, didn't do it with prejudice. That's correct, Your Honor. That signaled to me that there was a possibility that you could amend to satisfy some of the judge's concerns. I think what Judge Wilson was doing was recognizing the fact that on page 12 – you know, his analysis of use for a commercial activity is one paragraph, and it goes from page 11 to 12 of the excerpts of record. And he says that the launch service rights essentially would be pressed into service once the launch process begins. Right. That suggests to me that he thought you were just premature in serving the writ now. Right. And that conclusion, though, as I submit, is derived from his looking at this case from SpaceX's perspective rather than Coney's. If you read what he says, and one part I have not said already, he says – he characterizes NML's argument, my argument, is that an entity uses its contractual rights by, quote, failing to renege on them. That's a characterization that could only apply to SpaceX, not to Argentina and not to Coney. Well, you could fail to pay. But, no, because SpaceX already has been paid. So, you know, what we're talking about is that SpaceX is – on Judge Wilson's view, SpaceX was – we were saying that SpaceX was using its – was using the contractual rights by fulfilling its obligations under the contract, i.e., not reneging on them. Before we get – that really gets more to the merits of it. Well, I want to talk about jurisdiction first here. The judge dismissed the case without prejudice. Normally, when that happens, you have a right to amend, and we don't have jurisdiction because you don't have a final judgment. Why do we have a final judgment before us in this case? Because the legal rule that Judge Wilson sets forth is that we can attach the property only once the, quote, launch process begins. And that legal rule is both erroneous, as we have set forth in our briefs, and also it is – as a practical matter, it's not a remedy for us. So we chose to stand on the dismissal of the case as we credit. And I get that. But normally, wouldn't the district judge say, okay, you know, you've taken your stand. I get it. Dismissed with prejudice. Done. Then clearly you have an appealable judgment because it's final. Why is this a final judgment for purposes of an appeal? First, he didn't explicitly provide a leave to amend. So that's point one. And point two is that the legal rule here that he sets forth essentially resolves the case against us. Is there a judgment issued now? You chose not to amend, right? That's correct. And he issued a final judgment that dismissed the case. That's the question. Well, he issued a judgment, and you're asking the question whether it is, notwithstanding his characterization of it as a final judgment, whether it is final under Section 1291. And I believe it to be final. Do you have any case that you could refer us to, counsel, that would suggest that, given the posture of this particular judgment, that we have jurisdiction under 1291? I don't have one as I stand here, but I'd be happy to provide one to the court by letter. You elected to make it a final judgment by declining to amend. That's correct, Your Honor. I mean, we did not amend because under the legal rule that Judge Wilson set forth, there was no practical way for us to attach. If you lost on appeal, that would be the end of the case. I think that's correct. I mean, save the ability to go to the Supreme Court. But we are seeking to attach and execute upon and eventually sell. You have this case without really knowing what there is in the contract, that all kinds of things may be going on right now. That's correct, Judge Reinhart, and I think if you look again at the Fifth Circuit's decision in the Connecticut Bank of Commerce case, it points to one way that this court could resolve this case. The court looked there and said, we don't have a record before us that would allow us to determine how, in that case it was royalty obligations, how the royalty obligations are being used. The case was remanded to the district court, and then discovery ensued, and guess what? They were being used to secure a loan. And the Fifth Circuit then later held that those royalty obligations were used for a commercial activity and, therefore, attachable. That was, again, before this court's decision in AFCAP, which was. . . Can I ask you this? Looking at the complaint, let me go back. When you. . . On the blue board, pages 23 through 27, and note 2, you indicate that CONAI is receiving extensive prelaunch services to tailor the rocket to specifications of the satellite or vice versa. But I don't see anything like those allegations in the complaint. Is it necessary that you have such allegations? I mean, I admit that that kind of an allegation is much more susceptible to meeting the plausibility requirement of IQBAL, but you don't have that in the complaint, do you? We do, but obviously not in hyc verba, and I'll come to that. But, first, no, it's not necessary. We're not required at the pleading stage to articulate a particular legal theory for use of a commercial activity, particularly when we don't have the contract and we've had no discovery of the communications between SpaceX and Argentina that would allow us to determine exactly how the contractual rights here are being used. That's what happens in a lot of civil rights cases, too, is that you don't have the discovery and the Supreme Court says, too bad, goodbye. Well, the Supreme Court, I think, in IQBAL said that detailed allegations are not required. What's required is a plausible theory. And I would submit that when you have, indisputably, Konai has come to the United States to purchase commercial services. There is no dispute about that. And I would submit that the claim that the contractual rights are being used to obtain those same commercial services is not just plausible, it is intuitive, and it seems to just follow from common sense. The bottom line is, I gather what you're saying is that to the degree that the complaint is insufficient or, let's just say, not as fulsome in its description of what you later said in your brief, that we should imply that or the district court should have implied it. It's just kind of commonsensical, as you say. Right. Two points, Your Honor. One is paragraph 32, which is page 64 of the excerpts. We say, Konai's purchase of private launch services from SpaceX, as well as the launch services to be provided to Konai by SpaceX, are commercial activity within the meaning of the FSIA. So I think that is not just the only place that we mentioned. That's almost a recitation of statute, really, isn't it? I mean, of the treaty. No, I think what it is, we're stating that there are launch services that are being provided from Konai, I'm sorry, purchased by Konai and provided by SpaceX. And that is obviously implicit in the statement when you say, Konai's purchase of private launch services. What I'm wrestling with here, Counselor, is if you just said that there are all kinds of pre-launch services that are inevitably included in this and they're going to be back and forth, how much does this weigh, how is it measured, who's going to do what, and so on, these have a commercial value. And this is a hotly sought-after launch period. It has real value. It has present value. Wouldn't that have been a better pleading for you? I think if there's any concerns about the sufficiency of our pleading under 12b-6, then the answer, I think, would be to allow us to amend the complaint. And then we get back to kind of my initial question of since you didn't do that and the district court didn't issue an order with prejudice, I'm wrestling with the jurisdictional issue again. All of the amendment of our complaint would be futile in the face of the legal ruling that the district court set forth that there is no use until the satellite is launched. Well, I didn't quite read his order to go that far. That makes no sense. His order says launch services. No, Your Honor. That makes really no sense to me that you could only execute it as the missile is on the launch pad ready to take off. That's not what he intended, and that's not the way our definition in our LCAP case is used. I agree with the latter part of your statement about AFCAP, but I'll just read from lines 15 to 17 of page 12 of his opinion. Just as satellites are not put into action until they are in orbit, the launch service rights are not pressed into service until the launch process begins. But, you know, the launch process, if there had been some discovery, we might have learned that the launch process starts way in advance of the actual day and hour of the launch. I mean, you just imagine what has to go on to prepare for a launch. You're correct, Judge Pius. This is not an elementary school rocket club. This is a high-tech operation. It requires many months of interaction. But we don't know what the term launch services really means. Yes, that is correct because there's been no discovery and we have no contact with the process. It would be nonsensical to say it means only when it's on the launch pad and they're ready, they're counting down. I couldn't agree more, Judge Pius. That makes no sense to me. We think the standard is found in this Court's decision in AFCAP which cites that. So, you know, if you go to AFCAP, you know, we did attempt to provide a definition of what is used, whether the property is used in commercial under the statute. So we said something about like the Fifth Circuit, we conclude that property is used for a commercial activity in the United States when the property in question is put into action, put into service, availed or employed for a commercial activity, which is not simply in connection with a commercial activity or in relation to a commercial activity. So we tried to give some meaning to it. But what we didn't do was impose any sort of timing or time limits or anything of that nature. That's correct. And this Court also, after adopting Connecticut Bank of Commerce's definition of use for a commercial activity, it then went on to reference its analysis of the Fifth Circuit's decision in Atwood about the letter of credit. Right. And it basically referenced that that Court's decision that Petrobras plainly used the letter of credit for a commercial purpose within the ordinary meaning of the phrase used for because it used the letter of credit to secure the services of an American corporation. And that is the work that the contractual rights are doing here. It is securing the services of SpaceX. I see I've exceeded my time. If I may have a small opportunity for rebuttal, I would be grateful, Your Honor. Thank you, Your Honor. Thank you. May it please the Court. Carmine Beccuzzi from Cleary Gottlieb for the Republic of Argentina. The District Court was correct and correctly applied AFCAP when it ruled that there was no use here of these contract rights. It is not a normal use of the term use in this context or in any context to say the receiving of the bargain for consideration, which is obtained by using money to purchase the rights, is a use of the contract rights that are underlying all that. Counsel, do you agree? Let's just say this case didn't exist and I were Argentina and I owned these rights. Do you think they have commercial value? Could I sell them? That is a question. Whether they're A, assignable, and whether B, how unique they are for this particular launch, whether they could be sold. But whether they could be sold, Judge Smith, that's the point. Ownership of property under 1610 is not enough. And the Ninth Circuit – I'm trying to explore what this could possibly mean. It seems to me that admittedly in AFCAP we have a narrow definition we're dealing with, but also we don't have to deal with absurdities. And I'm a little concerned about how narrowly it's construed here. It seems that the idea that these are not currently being used flies in the face, at least of what I think I understand about space programs and space exploration. There are months and months and months and sometimes years and years and years of ongoing activity that's involved in preparing for the launch, making certain the satellite has certain telemetric requirements and all the electronics work and the launch vehicle has certain characteristics. Those presumably have commercial value. There's a demand for this. Sixty percent of SpaceX's business is private. It's commercial. It's not for governments. So can you answer my question? Is there a commercial value to this from your perspective? The fact that there could be value to it is – I think there may be value to it. However, that doesn't answer the question. If we followed the line that NML is urging the court to follow here, AFCAP would have come out differently because there you had obligations owned by a group of Chevron entities to the Congo, and they weren't obligations they just happened to owe to them. They were all pursuant to a contract. And so if you said, well, every time that money is about to be paid by Chevron to the Congo, that is Congo using its contractual rights, then that decision would have come out exactly opposite to what it did come out. But that's a strictly monetary difference, is it not? Here we're talking about ongoing activities, as I understand it. Or are you telling me that there's nothing in the record to substantiate that, in which case is it better that we send it back, let the district court deal with a little more realistic definition, and then permit discovery, and then have some kind of a summary judgment? Is that what we're dealing with here? I don't think so, Your Honor, because even though there's activity, and there is activity clearly in AFCAP and in Connecticut Bank of Commerce under a long-range contract, the test is not whether there's activity in connection with what they call a commercial activity. The test is, is there property being used for a commercial activity? When is the property used for commercial activity? I'm sorry. I was asked about that question. When would it be used? I think the used is the example of the remedy they're seeking. They want to use these rights for a commercial activity. They want to sell them. Forget they're selling it. Suppose they go ahead with the deal they have. When would the property be used? I don't think there is use now. There's ownership. We own these rights. I didn't say now. I said when. Is it never would it be used? Correct. Okay. Correct. There's a delivery of the consideration by SpaceX to launch this satellite. There's not. Let's think about an everyday parlance. You subscribe to a magazine. I subscribe to The New Yorker. I've paid for it. I've used money to get the subscription. Every Monday, The New Yorker arrives at the door. It's neither normal in common parlance or in a legal sense to say, oh, I am now using my right to receive The New Yorker. I am receiving the thing that I own that I've paid for in advance. Okay. So your point is that this could never be attached at any time because there's no property being used. Correct. Correct. And that was the analysis that the court did. I disagree with counsel that he was measuring this by SpaceX's activity and not by Konai's activity. He was following their reasoning, which is basically saying every time SpaceX does something, that's an expression or a use of our contractual rights. Your position is that under California law, the SpaceX contract is not attachable under any circumstances. Is that your position? That's the California law in this context under Rule 69 is limited by the FSIA. No, I get that. Answer my question about California law. Are you saying that the SpaceX contract that Argentina owns is not attachable under California law under any circumstances? I'm not sure I'm saying. No, I'm not saying that. Forget the FSIA. Is that right? Yeah, exactly. I think there are questions about whether you can attach something that's not assignable. As I understand it, there is a representation made by SpaceX's counsel on the record below in the court, but the contract itself is not in evidence. But that's number one. And number two, whether a supplying of unique services could also be attachable. That's a question I don't know has been resolved under California law. So it's not clear to me that these things are automatically assignable. But this court didn't get to either of those issues. No, it decided on the FSIA grounds. And I think those were clearly correct grounds because, put another way, again, the test is not whether there is, and they say it's commercial activity, but I also argue that the launching of an intergovernmental satellite for scientific research that is being used for research that will be distributed for free, that hardly can be seen as commercial. But even accepting their characterization that launching a satellite is commercial, just activity and connection, that's explicitly what AFCAP says. If it has some connection to commercial activity, that does not satisfy Section 1610 and the obligation or the requirement that the property actually be used for a commercial activity. I want to change the subject just for a second, counsel, and get your take on something. Let's assume, argue, and I don't want you to panic because I just argue anyway. Let's assume for just a moment that we find that, in fact, this is attachable under the treaty. But then the question is, is there a requirement that the hedge fund be able to pierce the corporate veil or something equivalent to that? I don't think there was any discussion of that because the court didn't get to that. But as a practical matter, if there were a determination that this gets past the treaty issue, how would one execute on that? Would there be a requirement that you, I'm using the commercial term, pierce the corporate veil? Would that be required? I think they would need to pierce the veil. I think the district court alluded to that in footnote 5 of his decision where he says the FSIA and BANSEC, the Supreme Court case that dealt with piercing the corporate veil in the context of Citibank in Cuba, said the FSIA doesn't determine substantive liability. The FSIA sets the ground rules for getting jurisdiction over states and state entities. And so the district court in footnote 5 said, I'm deciding as a matter of jurisdiction that were properly the parties are before the court. However, I would then need to decide at some point were the case to proceed that this property of Conay, and Conay is a matter of Argentine law, owns its own property. And this is indisputably the property of Conay. And I think it would be appropriate, it needs to be done, to have a BANSEC analysis, I will call it, what the Supreme Court sketched out in that case, to show that Argentina is so abusing this entity or that otherwise it would be a fraud or injustice to respect the separateness. And I think that analysis clearly gets you to what would be a fraud or injustice if you just said that Conay, which has its own creditors, including SpaceX, which has its own employees, which is doing work for the good of all, all of a sudden now is going to be tagged with having all of the debts of the Republic of Argentina, that it be made liable for it. And would that, would such an analysis occur under U.S. law or Argentine law, or has that been decided? The BANSEC case says it's a common, it basically says it's federal common law, and they say our federal common law tracks international law and you take into account all the different factors, which we presented as part of our 12B1 motion, which is can it sue or be sued, does it have its own property, is it run independent from the government, those are the types of elements. There's a debate in the papers over the so-called core functions test, and the Ninth Circuit in the Kubik case involving Iran said we're not adopting, even for the military, which nothing gets more governmental than the military, even for the military, the Ninth Circuit said we're not adopting a categorical rule that the military is always going to be deemed the parent state. So when you look, and again, the district court considered that and he said, I still believe that this entity, for jurisdictional purposes, I'm going to treat like the republic and therefore here, and it's here because the republic waived its immunity from suit in the U.S. Even if I assume that, I still have to get to that BANSEC issue. And I think that's right. I think the court erred in doing the measuring the way it did. I think it undervalued because in the Kubik defense case, this court said that there was no evidence of some of the factors that would get you away from the presumption that the military is the state. So I think the court gave little weight to the factors that show Konai should be treated differently and then said, well, because what it does is so governmental, I'm going to treat it as one for jurisdictional purposes. But I think it did recognize that under federal common law, you really have to think about, are you going to make these assets, this space program, and the spaceport case is essential here. The spaceport case, and this is the reason why I think they've tied themselves up into knots, saying we recognize we can't go after the satellite because the spaceport says satellites aren't used on the ground. They're used into space. They're used in space. So we recognize we can't get that. We recognize, and that's a big part of the jurisdictional argument, that what's going on here is governmental activity. We're talking about the government space agencies of Italy, Belgium, and Argentina. We recognize all that. But if you parse this transaction into many, many transactions, you are using your contract rights for all this to happen, where I think the court recognized in any normal use of the word use, that's not what is happening, and so rejected the case. And I think that was the right outcome, and it should be affirmed. So I would just close to say that adopting their definition of use would go well beyond any precedence of this court. In cubic defense, I would mention, Judge Smith, just to follow your analysis, there was a judgment there. And judgments have value. You can sell a judgment. You can do lots of things with a judgment. And this court said, but the judgment is not being used. And they said it could be used. And if you used it to secure a transaction, if you tried to sell it, that would be commercial activity. But it's not happening. The same thing here. Conai is not alienating its rights. It is receiving the bargain for consideration. And the court was wholly correct under this court's precedence and the Fifth Circuit and the Second Circuit to reject that that's a use. And the only other case I'll mention is the Atwood case. There, there were contracts to do oil drilling. The letter of credit that my opponent mentions, that was a separate document being used to secure that activity. It wasn't the analysis of the Fifth Circuit that the fact that they were receiving these drilling or other services under that contract, that those rights were being used. What they said was the letter of credit that was there to secure that, that was being used. The way a judgment might be used in cubic or contract rights might be used, which is indisputably not happening here. Thank you, Your Honor. Thank you, Judge. Thank you, Your Honors. I'll just make a very few quick points. First, Judge Smith on the Pierce v. Corporate bail point. That is a second-order question. The first question is under the core functions test whether Conai is a legal separate person. And that is a question that is resolved under the FSIA. Every single circuit that has looked at the issue, Second Circuit, D.C. Circuit, Fourth Circuit, Fifth Circuit, Ninth Circuit, has held the core functions test as the test that you apply to determine whether an agency or a subunit of the government is inseparable from the government. And the district court here did not clearly err when it determined what Conai's core functions are, based only on Conai's own declarations. That's the first point. Second point, my friend, Mr. Bucuzzi, says the contractual rights are never used. That can't possibly be true. People assert contractual rights. You demand action because of contractual rights. But more to the point here, under this court's decision in AFCAP looking back at Connecticut Bank of Commerce, just the action of a letter of credit simply being out there securing the performance of the counterparty for a commercial activity. That is, at a minimum, what's going on here. Discovery may reveal much more is going on here. My colleague, Mr. Bucuzzi, talked about AFCAP and the reason the property in AFCAP was not attachable. This is at page 1093. It was found that the obligation, the royalty obligation in that case, was owned by the Chevron entity. It was not the property of the Congo. That's why it wasn't attachable, not because it wasn't used for a commercial activity. The representation that SpaceX's counsel made that property is not assignable, that is true. He asserted that before the district court. But we have no way of knowing anything about that because the contract is not before the court, and that points to a fundamental defect in the analysis of the district court here. It just accepted basically as given what SpaceX's counsel said about this contract. And finally, the commercial activity point, that this, because it is to study the environment, it's not commercial. That line of reasoning was rejected by the Supreme Court 9-0 in Weltover. That's page 617 of Weltover. It was actually rejected by you, Judge Reinhart, five years before Weltover in the Banco Comerimax case. Thank you. Thank you, counsel. The case is, it will be submitted.
judges: Reinhardt, Paez, M. Smith